UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MSC MEDITERRANEAN SHIPPING COMPANY S.A., <br><br> Plaintiff, <br><br> v. <br><br> PEGASUS MARITIME, INC. and MOD TEXTILE & PERFUMES, INC., <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** |

COMES NOW plaintiff MSC MEDITERRANEAN SHIPPING COMPANY S.A. ("MSC" or "Plaintiff") and its Complaint and causes of action against defendants PEGASUS MARITIME, INC. ("PEGASUS") and MOD TEXTILE & PERFUMES, INC. ("MOD") (together "Defendants") and alleges as follows:

### JURISDICTION AND VENUE

1. This is a maritime claim for breach of contract and unpaid detention charges pursuant to an ocean bill of lading and an ocean carrier's marine tariff, comprising an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). It also presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. § 40101, *et seq*.

2. Venue and personal jurisdiction are proper in this Court pursuant to the contractually agreed-upon forum selection clause in the applicable bill of lading.

1

## PARTIES

3. Plaintiff is now, and at all material times was, a foreign corporation duly organized and existing under the laws of Switzerland, with a principal place of business located at 12-14 Chermin Rieu CH-1208, Geneva, Switzerland, and is an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

4. Defendant PEGASUS is now, and at all material times was, a corporation organized and existing under the laws of the state of New York, with its principal place of business at 250 West 39th Street, Suite 501, New York, New York 10018.

5. Defendant MOD is now, and at all material times was, a corporation organized and existing under the laws of the state of Florida, with its principal place of business at 3601 Vineland Rd., Orlando, Florida 32811.

## FACTUAL BACKGROUND

6. In December 2020, MOD contracted with PEGASUS for the shipment of 667 packages of spray perfume ("Cargo") in container MEDU2109328 ("Container") from Hazira, India to Port Everglades, Florida ("Shipment").

7. PEGASUS, on behalf of MOD, subsequently contracted with MSC for the carriage of the Container under bill of lading MEDUMA472767 dated December 14, 2020 ("MSC Bill"). A copy of the MSC Bill is attached hereto as Exhibit "A".

8. MSC carried the Container from Hazira, India to Port Everglades, Florida, pursuant to the terms and conditions of the MSC Bill.

9. At all material times, PEGASUS was the named consignee under the MSC Bill and MOD was the owner of the Cargo, and thus they both qualify as a "Merchant" under Clause 1 of the Standard Terms and Conditions of the MSC Bill.

10. PEGASUS and MOD were the entities for whose account the transportation services were provided by MSC, were the parties that received and benefitted from the transportation services provided by MSC, and were the entities responsible for payment of charges relating to the transport of the Container.

11. Defendants tendered the Container to MSC for transportation, for which freight and other charges were lawfully incurred pursuant to the terms of the MSC Bill and/or applicable marine tariff(s).

12. The MSC Bill's Standard Terms and Conditions provides the following:

**1.   DEFINITIONS**

. . .

Merchant: includes the Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person.

. . .

**3.   CARRIER'S TARIFF**

The terms and conditions of the Carrier's applicable Tariff are incorporated into this Bill of lading. Particular attention is drawn to terms and conditions concerning additional charges including demurrage, per diem, storage expenses and legal fees, etc. A copy of the applicable Tariff can be obtained from the Carrier or its agent upon request and the Merchant is deemed to know and accept such Tariff. In the case of any conflict or inconsistency between this Bill of Lading and the applicable Tariff, it is agreed that this Bill of Lading shall prevail.

. . .

**14. DESCRIPTION OF GOODS AND MERCHANT'S RESPONSIBILITY**

. . .

14.8 The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff and as advised by the local MSC agent at the Ports of Loading and Discharge. Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from

the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tariff.

14.9 The Merchant shall redeliver, to a place nominated by the Carrier, the Containers and other equipment in like good order and condition, undamaged, empty, odour free, cleaned and with all fittings installed by the Merchant removed and without any rubbish, dunnage or other debris inside. The Merchant shall be liable to indemnify the Carrier for any and all costs incurred reinstating or replacing Containers and other equipment not returned in the condition as specified above, including the reasonable legal expenses and costs of recovering the costs incurred and interest thereon.

. . .

## 17. CARRIER'S LIEN

The Carrier, its servants or agents shall have a lien on the Goods and any document relating thereto for Freight and for general average contributions to whomsoever due. The Carrier, its servants or agents shall also have a lien against the Merchant on the Goods and any document relating thereto for all sums due from the Merchant to the Carrier under any other contract. The Carrier may exercise its lien at any time and any place in its sole discretion, through the action of any servant, agent or Subcontractor, whether the contractual carriage is completed or not. The Carrier's lien shall also extend to cover the cost and legal expense of recovering any sums due. The Carrier shall have the right to sell any Goods liened by public auction or private treaty, without notice to the Merchant. Nothing herein shall prevent the Carrier from recovering from the Merchant the difference between the amount due to the Carrier and the net amount realised by such sale.

## 20. NOTIFICATION AND DELIVERY

. . .

20.2 The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff or as otherwise agreed. If the Merchant fails to do so, the Carrier may without notice unpack the Goods if packed in Containers and/or store the Goods ashore, afloat, in the open or under cover at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, including for misdelivery or non-delivery, shall cease and the costs of such storage shall forthwith upon demand be paid by the Merchant to the Carrier.

20.3 If the Goods are unclaimed within a reasonable time or whenever in the Carrier's opinion the Goods are likely to deteriorate, decay or become worthless, or incur charges whether for storage or otherwise in excess of their value, the Carrier may at its discretion and without prejudice to any other rights which it may have against the Merchant, without notice and without any responsibility attaching to it, sell, abandon or otherwise dispose of the Goods at the sole risk and expense of the Merchant and apply any proceeds of sale in reduction of the sums due to the Carrier

from the Merchant under or in connection with this Bill of Lading.

20.4 Refusal by the Merchant to take delivery of the Goods in accordance with the terms of this clause and/or to mitigate any loss or damage thereto shall constitute an absolute waiver and abandonment by the Merchant to the Carrier of any claim whatsoever relating to the Goods or the carriage thereof. The Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant.

13. Pursuant to the terms of the MSC Bill, MSC carried the Container and Cargo from Hazira, India to Port Everglades, Florida.

14. In January, 2021, MSC discharged the Container and Cargo in Port Everglades, Florida, and made them available for collection.

15. Defendants failed to take delivery of the Container and Cargo within the allowed free time, which caused detention and demurrage charges to accrue.

16. Having effected delivery of the Container and Cargo to Port Everglades, Florida, MSC fully performed all of its obligations under the MSC Bill.

17. As a result of Defendants' failure to take delivery of the Container and Cargo, MSC continued to incur damages, liabilities, charges, expenses, fees, and costs for detention and demurrage.

18. On or about April 15, 2021, MSC sent a letter to Defendants to inform them that the Container and Cargo remained uncollected at the Port Everglades terminal, and that detention and demurrage charges continued to accrue. The letter also served as formal notice that, in the absence of any action or reply on behalf of Defendants, MSC reserved its rights to take action in accordance with the MSC Bill regarding the Cargo to recover MSC's costs, expenses and/or losses.

19. On or about April 28, 2021, MSC sent a second letter to Defendants to inform them that the Container and Cargo still remained uncollected at the Port Everglades terminal, and that detention and demurrage continued to accrue. The letter also served as final notice that, in the absence of any action or reply from Defendants, MSC would take steps to repatriate, sell, destroy, or otherwise dispose of the Cargo without further notice, to pay the accrued detention

and demurrage costs, while reserving the right to recover any additional costs that may be due and owing.

20. On or about May 25, 2021, PEGASUS informed MSC that PEGASUS abandoned the Cargo.

21. MOD never responded to MSC's two letters or took any steps to collect the Cargo.

22. MSC subsequently exercised its rights under the MSC Bill and sold the Cargo as salvage for $5,800.

23. Port Everglades Terminal accepted MSC's payment of $5,800 as a total settlement of the demurrage charges that had accrued due to Defendants' failure to take delivery of the Container and Cargo.

24. However, MSC's detention charges, totaling $24,030, remain outstanding due to Defendants' failure to take delivery of the Container and Cargo.

25. Under the terms of the MSC Bill and/or applicable marine tariffs, Defendants are jointly and severally obligated to pay the outstanding detention fees, due and owing to MSC.

26. Accordingly, Defendants are liable to MSC for the outstanding detention charges totaling $24,030 plus interest.  In addition, attorneys' fees, costs, and expenses incurred in collecting said charges continue to accrue in accordance with the terms of the MSC Bill and/or applicable marine tariffs.

## **FIRST CAUSE OF ACTION**

(For Breach of Maritime Contract)

27. Plaintiff refers to and incorporates by reference as though fully set forth at length herein the allegations in paragraphs 1 through 26.

28. Plaintiff transported and carried the Container and Cargo at the request and for the benefit of PEGASUS and MOD, in accordance with the applicable terms and conditions of the MSC Bill.

29. Plaintiff fully performed all of its obligations under the MSC Bill and carried the Container and Cargo from Hazira, India and successfully discharged the Container and Cargo in Port Everglades, Florida.

30. Under the MSC Bill and applicable law, Defendants were required to take delivery of the Container and Cargo within the time provided in the MSC Bill and/or applicable tariffs, and Defendants agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses, and fees arising out of or resulting from Defendants' failure to take delivery of the Container and Cargo.

31. Defendants breached the applicable terms and conditions of the MSC Bill by failing to take delivery of the Container and Cargo, and by failing to pay Plaintiff the damages, liabilities, detention, demurrage, destruction, and other related expenses and fees arising from their breaches of the applicable terms and conditions of the MSC Bill.

32. As a proximate cause of Defendants' breaches of the applicable terms and conditions of the MSC Bill, MSC has incurred, and Defendants are liable to MSC for, outstanding detention totaling $24,030 plus interest. In addition, attorneys' fees, costs, and expenses incurred in collecting said charges continue to accrue in accordance with the terms of the MSC Bill.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

33. Plaintiff refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 24, above.

34. Plaintiff transported and carried the Container and Cargo at the request and for the benefit of PEGASUS and MOD, in accordance with the MSC Bill and subject to the rates and charges in MSC's tariffs on file with the Federal Maritime Commission.

35. Under said tariffs, Plaintiff is required to collect and is entitled to recover from Defendants, and Defendants are required to pay Plaintiff, all unpaid demurrage, detention, destruction, and any other damages, liabilities, charges, penalties, costs, expenses, and fees

arising from the carriage of the Container and Cargo, as well as Defendants' failure to accept delivery of the Container and Cargo.

36. Despite MSC's multiple demands for payment, Defendants have failed to pay MSC amounts due under the tariffs and tariff compensation is due, owing, and unpaid to MSC from Defendants in an amount totaling $24,030 plus interest. In addition, attorneys' fees, costs, and expenses incurred in collecting said charges continue to accrue in accordance with applicable tariffs.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against PEGASUS and MOD as follows:

1. That the Court order judgment in favor of MSC and against PEGASUS and MOD, jointly and severally, in the amount of $24,030 outstanding detention costs caused by Defendants' breaches of the MSC Bill and/or applicable tariffs;

2. That the Court award MSC its attorneys' fees, costs, and expenses incurred as a result of PEGASUS and MOD's breach or breaches and/or in collecting the sums due from PEGASUS and MOD;

3. That the Court award MSC interest on all of the above as well as MSC's costs of suit; and

4. That the Court award such other and further relief as the Court deems just and proper.

Dated: December 13, 2022                                         Respectfully Submitted,

                                                                 GORDON & REES, LLP

                                                                 By: */s/ Mark A. Beckman*
                                                                     Mark A. Beckman
                                                                     1 Battery Park Plaza, 28th Floor
                                                                     New York, NY 10004
                                                                     Tel: (212) 269-5500/Fax: (212) 269-5505
                                                                     mbeckman@grsm.com
                                                                     *Attorneys for Plaintiff MSC*
                                                                     *Mediterranean Shipping Company S.A.*